**GREEN SPRING DAIRY, Inc.**

v.

**COMMISSIONER OF INTERNAL REVENUE.**

No. 6561.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 9, 1953.

Decided Nov. 10, 1953.

---

3. See supra note 1.

472

Hugh C. Bickford, Washington, D. C. (Morton P. Fisher, Baltimore, Md., and Henry H. Elliott, Washington, D. C., on the brief), for petitioner.

Melva M. Graney, Sp. Asst. to Atty. Gen. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack and Lee A. Jackson, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

The main question raised by this petition for review is the interpretation to be given to section 732 of the Internal Revenue Code, 26 U.S.C.A., which provides that the determination by the Tax Court of tax liability under section 722 of the Code, relating to the calculation of the excess profits tax under particular circumstances, shall not be reviewed by any court or agency except the Tax Court, but that such a determination by any division of the Tax Court shall be reviewed by a special division of the Tax Court, consisting of not less than

three judges thereof, whose decision shall not be reviewable by the Tax Court and shall be deemed the decision of the Tax Court.

Section 722 of the Code is designed to give relief to a taxpayer in any case in which the computation of its excess profits tax under the provisions of the statute relating thereto results in an excessive and discriminatory tax. Such a condition may arise if the average base period net income is an inadequate standard of normal earnings because the taxpayer changed the character of its business during or immediately prior to the base period. The statute provides that if the taxpayer shows that such a situation existed in his case, and further shows what would be a fair and just amount representing normal earnings during the base period, this amount shall be used as a constructive base period net income for the purpose of computing the tax. Section 732 of the Code is designed to regulate the procedure to be followed in the review of abnormalities by the Tax Court and contains the provisions with respect to the finality of the Tax Court decisions and the review thereof by a special division of the Tax Court as above set out.

Green Spring Dairy, Inc., the taxpayer, is in the business of bottling and distributing milk in Baltimore. In each of the years 1940 to 1945 it filed its federal tax returns for the period of the calendar year on the accrual basis. Subsequent to the payment of its excess profits taxes for these years it filed applications with the Commissioner of Internal Revenue for excess profits tax relief under section 722. It claimed that it was entitled to relief under this section because it changed the character of its business by a substantial expansion of its capacity during or immediately prior to the base period 1936 to 1939. It alleged that it suffered losses in the years 1937 and 1938 because its overhead was too large for its volume, and that therefore a comparison of its income during this period with its income in subsequent years when its business expanded within the capacity of its new plant would result in an unfair and discriminatory excess profits tax.

The Commissioner sent the taxpayer two notices—one for the years 1940 and 1941 and one for the years 1942 to 1945, in which he determined deficiencies in the taxpayer's excess profits taxes for these years based on so-called "standard" issues which had nothing to do with abnormalities. The Commissioner also determined that the taxpayer was not entitled to relief under section 722.

The taxpayer then filed petitions with the Tax Court in respect to each notice and prayed for a redetermination of the deficiencies set forth by the Commissioner in his notices. The petition for the years 1940 and 1941 alleged that the taxes in controversy were income and excess profits taxes in the respective amounts of $3409.03 and $29,854.64. These were the amounts which the Commissioner had determined to be the taxpayer's excess profits tax liabilities for 1940 and 1941. The petition for the years 1942 to 1945 (The deficiencies determined by the Commissioner for these years were $1342.60 and $3863.98 respectively) alleged that the taxes in controversy were excess profits taxes in the amount of $58,809.58 which was the sum total of the deficiencies in this tax determined by the Commissioner for these years. Both petitions prayed the court to decide that there was no deficiency due by the taxpayer and that the taxpayer had overpaid its excess profits taxes. No error was specified other than the Commissioner's denial of relief under section 722.

The answer of the Commissioner admitted that the taxes in controversy were the excess profits taxes for the years covered by the petitions.

The two cases were consolidated for trial and at the outset of the hearing the court was informed that the issues relating to the deficiencies were not before the court. The trial was confined to the question whether the Tax Court was in error in denying the taxpayer excess profits tax relief under section 722. The Tax Court decided this issue in favor of

the Commissioner. At the end of the opinion appeared the words "Reviewed by the Special Division". See 18 T.C. No. 29.

This decision was promulgated on May 9, 1952 and pursuant thereto an order was entered in each case on May 14, 1952 that the taxpayer was not entitled to relief under the provisions of section 722. These orders were deficient in that they were confined to the denial of relief under section 722. Accordingly on June 3, 1952 the Commissioner moved to modify the decisions by adding the finding that there were deficiencies in excess profits taxes owing by the taxpayer in the amounts determined by the Commissioner, and accordingly amended orders were filed on August 28, 1952 pursuant to a supplemental opinion of the Tax Court filed that day. See 18 T.C. No. 119.

During the interval between these two decisions the taxpayer on June 9, 1952 filed a motion for rehearing and a petition for review by special division in respect to the holding that the taxpayer was not entitled to relief under section 722. These motions were denied on August 21, 1952 and the order denying review by special division showed that in due course the special division of the court, regularly constituted pursuant to section 732(d) of the Internal Revenue Code, had theretofore fully reviewed and approved the determination of the division of the court that heard the case, and had found that the contention set out in the petition for review to be without merit.

The principal question for decision is the meaning to be given to those provisions of section 732 which prescribe and limit the review to which a taxpayer is entitled when he makes claim for refund of excess profits taxes under section 722 because of abnormalities and his claim is disallowed. If the Tax Court proceeding under these provisions of these sections, finds that there is no overpayment in such case, and further finds that there is a deficiency, the court has jurisdiction to determine the amount; and if in the course of its determination it decides any question solely by reason of section 722 its decision is not subject to review by any court or agency except the Tax Court itself.

There is no controversy with respect to the provisions of sections 732(a), (b) and (c). The difference arises as to the meaning of section 732(d) which requires a further review in such a case within the Tax Court itself as follows:

"(d) The determinations and redeterminations by any division of the Tax Court involving any question arising under section 721(a) (2) (C) or section 722 with respect to any taxable year shall be reviewed by a special division of the Tax Court which shall be constituted by the presiding judge and consist of not less than three judges of the Tax Court. The decisions of such special division shall not be reviewable by the Tax Court, and shall be deemed decisions of the Tax Court."

The taxpayer's contention is that Congress intended that the review by a special division of the Tax Court in cases of this kind should take the place of a review by the federal courts of appeals, and consequently the same procedure should be followed in the special division as is employed by the appellate courts in the review of decisions of the Tax Court in ordinary cases, including the right of the parties to file briefs and to appear by counsel and to be heard. It is pointed out that the statute as originally passed by the House of Representatives provided that the special division should be the sole trial court in such cases; but the Senate amended the bill to provide for an initial hearing by a regular division of the Tax Court to be followed by a review by a special division of the court constituted by the chairman, or the presiding judge, and composed of not less than three members. See Senate Report No. 1631, 77th Cong., 2nd Sess., p. 206. The report shows that it was deemed essential that such cases be decided by one group familiar with the problems involved so as to insure a con-

sistent and uniform application of the statutes; and at the same time there was provided flexible machinery to coordinate cases involving both relief and abnormalities as well as other questions. The contention is that this report indicates the deliberate intention of Congress to have first a trial and second a review, with all the customary features of review by an appellate court.

The taxpayer relies upon the established rule that the opportunity to present a case and to be heard is fundamental to the validity of proceedings by administrative tribunals as well as by courts. In many decisions it has been held that the right to due notice of the claims of the opposing parties and an opportunity to be heard in a fair and open hearing are assured to every litigant by the Federal Constitution. See Morgan v. United States, 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288; 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. 1129; Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 165, 166, 71 S.Ct. 624, 95 L.Ed. 817. Applying these rules the taxpayer contends that it was deprived of its constitutional rights because it had no notice of the composition of the special division which considered this case or of the contentions that the Commissioner presented to the division, and no opportunity to appear and oppose these contentions.

If this were the whole story, the taxpayer's position would be sound; but the fact is that the taxpayer had full opportunity to appear before the Tax Court at the hearing before the judge assigned to the trial of the case and to present evidence and to be heard; and the taxpayer availed itself of the opportunity, as will fully appear from the decisions of the court reported at 18 T.C. 217 and 18 T.C. 929. Consequently the taxpayer had its day in court and was not denied due process. Moreover, as required by the statute, the case was reviewed by the special division as the opinion of the trial judge and the records of the Tax Court disclose.

The question, therefore, is not whether the taxpayer was denied its constitutional rights but whether it was accorded the kind of review which the special division of the Tax Court must give to a case involving abnormalities under section 722. We think that the review given in this case was in accord with the Act of Congress. It is not correct to say that Congress substituted review by the special division in place of review by the courts of appeal. Section 732(c) which prohibited review or redetermination of cases under section 722 by any court or agency except the Tax Court, was enacted along with section 732(a) and (b) by section 9 of the Excess Profits Tax Amendment of 1941, 55 Stat. 17, 26. It was not until the next year that section 732(d) with whose interpretation we are now concerned, was added by section 222 (c) of the Revenue Act of 1942, 56 Stat. 798, 917, 26 U.S.C.A. Int.Rev.Acts, page 302.

It is of course arguable that when Congress modified the conclusive effect to be given to a decision of the Tax Court in these cases by the Act of 1941 and provided for a review of decisions by a special division in 1942, it had in mind the procedure followed by the courts of appeals in reviewing ordinary decisions of the Tax Court; but it is more reasonable to construe the statute in the framework of the legislation relating to the taxation of incomes. In these statutes, as they appear today in the Code, we find section 1103, which empowers the Tax Court to designate a presiding judge who may from time to time divide the court into divisions of one or more judges; section 1118 which directs that a division shall hear and determine any proceeding before the Tax Court which is assigned to it and shall make a report thereof, and that the report shall become the report of the Tax Court within thirty days unless the presiding judge directs that it shall be reviewed by the Tax Court; and section 1116 which provides that notice and opportunity to be heard upon any proceeding instituted before

the Tax Court shall be given to the parties, and that if an opportunity to be heard is given before a division of the Tax Court, neither party shall be entitled to notice and opportunity to be heard before the Tax Court upon review, except upon a specific order of the presiding judge. In our opinion it was this kind of review without additional opportunity to the parties to be heard which Congress had in mind in enacting section 732(d). The purpose of the review was not to secure a reargument of the case but to assure a consistent and uniform application of the principles of the excess profits tax statute by a group familiar with the problems involved.

The additional contention is made that the Tax Court was without authority to make the amended orders on August 28, 1952 whereby it found that there were deficiencies in excess profits taxes as determined by the Commissioner. The reason given is that the finding was barred by the limitations prescribed by Section 275 of the Code which directs that income taxes shall be assessed within three years after a return is filed and that no proceeding in court without assessment for the collection of the tax shall be begun after the expiration of such period. The decision of this question depends upon whether the running of the statute was suspended during the pendency of the proceedings in the Tax Court by reason of the terms of Section 277 which provides:

> "The running of the statute of limitations provided in section 275 or 276 on the making of assessments and the beginning of distraint or a proceeding in court for collection, in respect of any deficiency, shall (after the mailing of a notice under section 272(a)) be suspended for the period during which the Commissioner is prohibited from making the assessment or beginning distraint or a proceeding in court (and in any event, if a proceeding in respect of the de-

ficiency is placed on the docket of the Tax Court, until the decision of the Tax Court becomes final), and for sixty days thereafter."

The Commissioner relies on the provision that the running of the period of limitations is suspended if a proceeding in respect of a deficiency is placed on the docket of the court until the decision of the court becomes final and for sixty days thereafter. The taxpayer asserts in reply that there was no proceeding in respect to a deficiency before the Tax Court because the amounts of the deficiencies, considered apart from abnormalities, were not in dispute and the court was expressly told at the beginning of the hearing that the deficiencies were not before the court and no evidence was submitted in respect thereto. The controverted issue was whether the taxpayer was entitled to relief under Section 722.

In this respect the taxpayer relies on decisions [1] which hold that a section 722 proceeding, based on section 732, is separate and distinct from a proceeding for the determination of standard issues under section 272, and that if a claim is filed under section 272 and rejected, the Commissioner may proceed to assess and collect the deficiencies even if a petition is filed with the Tax Court claiming the benefits of section 722. The fact remains, however, that in the instant case the taxpayer placed upon the docket of the Tax Court, before the period of limitations had expired, proceedings which in terms related to excess profits tax deficiencies and in addition claimed a refund under section 722 of excess profits taxes that had been paid. These proceedings were based on notices of the Commissioner which combined determinations of deficiencies on standard issues with a disallowance of relief and refund under section 722 and therein the taxpayer sought redetermination of the deficiencies set forth by the Commissioner in his notices. By this course of action the taxpayer placed on the docket

[1]. Pohatcong Hosiery Mills v. Commissioner of Internal Revenue, 3 Cir., 162 F.2d 146; Ideal Packing Co., 9 T.C. 346; Wilson v. Commissioner of Internal Revenue, 42 B.T.A. 1254.

of the Tax Court proceedings in respect to the deficiencies and the running of the statute was suspended until the decision of the Tax Court thereon was made.

Doubtless the taxpayer could have withdrawn this part of the proceedings or they might have been dismissed for want of prosecution; and it may be that the Commissioner could have proceeded with the enforcement of the taxes while the proceedings were pending; but these possibilities do not alter the fact that the taxpayer docketed the proceedings and permitted them to remain on the docket throughout the pendency of the case. This was enough to satisfy the statute even though the merits of the deficiency issues were not in controversy. See American Equitable Assur. Co. of New York v. Helvering, 2 Cir., 68 F.2d 46, where it was held that under section 277 the pendency of a proceeding suspends the running of the statute even though the Tax Court subsequently dismisses the proceeding for lack of jurisdiction.

Affirmed.