**HELMS BAKERIES, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 14808.**

United States Court of Appeals Ninth Circuit.

Aug. 14, 1956.

Rehearing Denied Sept. 21, 1956.

George T. Altman, Beverly Hills, Cal., for petitioner.

H. Brian Holland, Asst. Atty. Gen., Harry Marselli, Lee A. Jackson, Attys., Department of Justice, Washington, D. C., for respondent.

Before ORR and CHAMBERS, Circuit Judges, and JERTBERG, District Judge.

JERTBERG, District Judge.

This proceeding involves determination of Federal Excess Profits Taxes for the calendar years 1943, 1944 and 1945.

The petitioner, Helms Bakeries (hereinafter referred to as the petitioner) is a California corporation. It filed its tax returns, including its excess profits tax returns, for the years 1940–1945 with the Collector of Internal Revenue for the Sixth District of California.

The only issues presented to the Tax Court for decision related exclusively to the petitioner's right to relief under Section 722 of the Internal Revenue Code of 1939 for the taxable years 1943, 1944 and 1945. The taxpayer was in existence during the entire base period—1936 through 1939—and was entitled to use an excess profits credit based on income under the provisions of Section 713 of the code.

The pertinent sections before this court are Section 722(b) (2) and Section 722(b) (4).

Section 722(a) reads: "In any case in which a taxpayer establishes that the tax computed under this subchapter (without the benefit of this section) results in an excessive and discriminatory tax and establishes what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income for the purposes of an excess profits tax based upon a comparison of normal earnings and earnings during an excess profits tax period, the tax shall be determined by using such constructive average base period net income in lieu of the average base period net income otherwise determined under this subchapter. * * *"

Under Section 722(b) (2) relief is allowed if "the business of the taxpayer was depressed in the base period because of temporary economic circumstances unusual in the case of such taxpayer or because of the fact that an industry of which such taxpayer was a member was depressed by reason of temporary economic events unusual in the case of such industry."

Under Section 722(b) (4) relief is allowed if "the taxpayer, either during or immediately prior to the base period, commenced business or changed the character of the business and the average base period net income does not reflect the normal operation for the entire base period of the business. * * * *" It is also provided under that section that "if the business of the taxpayer did not reach, by the end of the base period, the earning level which it would have reached if the taxpayer had commenced business or made the change in the character of the business two years before it did so, it shall be deemed to have commenced the business or made the change at such earlier time. * * * *" The term "change in the character of the business" is defined in the section to include "a difference in the capacity for production or operation."

Specifically, before the Tax Court, the petitioner ascribed error to the Commissioner of Internal Revenue and rested its claim to the right to Section 722 relief for the taxable years in question, upon two grounds: (1) That its base period earnings were depressed by reason of a price war within the purview of Section 722(b) (2); and (2) That it had increased its capacity for production and operation within the purview of Section 722(b) (4).

After the trial on the merits before the Tax Court, that Court handed down its findings of fact and opinion holding that petitioner was not entitled to any relief under Section 722(b) (2) or under Section 722(b) (4), and thereafter entered its decision in favor of the Commissioner. The opinion of the Tax Court bore a notation at the end reading as follows: "Reviewed by the Special Division". The Tax Court then entered its decision in the case as above indicated. Petitioner filed a motion to amend the findings of fact, which motion was denied. Thereafter petitioner filed a motion to vacate the decision of the Tax Court, and for reconsideration, and that motion was subsequently set for hearing before the Tax Court, and after hearing and submission of memoranda, the motion was denied.

The questions presented for review by this Court, as stated by petitioner, are:

(1) "Whether in computing relief from excess profits taxes, under Section 722(b) (2), I.R.C.1939, computation of the constructive average base period net income on a basis which recognizes and makes allowance for the fact that the taxpayer was a growing corporation may be denied because computation under a formula which also recognizes and makes allowance for the fact of growth is permitted under Section 713(f) of that code."

(2) "Whether the Tax Court denied petitioner due process of law in:

"(a) Substituting its arbitrary and capricious judgment—in the form of an ultimate finding 'that

lack of productive capacity was not a factor which to any appreciable extent limited petitioner's sales'—for the judgment of petitioner's president and general manager where:

"(1) Said president and general manager, as found by the court, considered that there was an available market for the goods to be produced by the additional productive capacity;

"(2) Said president and general manager, as found by the court, was an experienced executive in the bakery industry whom it regarded as aggressive and foresighted; and

"(3) There is a complete absence of any other finding on this point.

"(b) Making the arbitrary distinction between a change in capacity which 'caused', and one which 'permitted', expansion and growth.

"(c) Failing to make an ultimate finding or other determination of fact on the issue of change in capacity for operation, adequate data for computation thereof being contained in the evidentiary findings.

"(d) Failing to apply to petitioner the principle of 'back-cast' of income from 1939, the basis of growth being indirectly given effect through such back-cast principle, although it applied that principle in cases involving other taxpayers."

(3) "Whether the Tax Court properly and fully carried out the review by a special division required by Section 732 (d), I.R.C.1939, although (a) that court promulgated no rules of any kind under that section, (b) taxpayers were never informed of their rights and procedures, if any, in respect of such review, (c) the record contains nothing in respect of such review except the sole and simple fact that the findings and opinion had been reviewed by the special division, and (d) petitioner's motion to vacate and for reconsideration was denied by the Tax Court without consideration by the special division.

(4) "Whether this Court has jurisdiction to review the determination of the Tax Court to the extent to which the above questions are involved."

Petitioner does not challenge the findings of fact of the Tax Court, except the findings contained in the last two paragraphs thereof, which read as follows:

"Lack of productive capacity was not a factor which to any appreciable extent limited petitioner's sales.

"The excess profits tax paid by petitioner for the years in issue was not excessive and discriminatory. Petitioner was not entitled to a constructive average base period net income which was large enough to produce a credit greater than the credit received under Section 713 of the 1939 Code."

Respondent concedes that this Court has jurisdiction to review the questions presented as to whether the petitioner has been accorded a review by the Special Division of the Tax Court in keeping with Section 732(d), but contends that this Court should decline to take jurisdiction of the petition for review in so far as it relates to all other matters attempted to be presented to this Court, namely, the points made with respect to the decision of the Tax Court as to the petitioner's right to relief under the provisions of Section 722(b) (2) and Section 722(b) (4) because of the prohibition contained in Section 732(c).

We will first consider petitioner's contentions in respect to Section 732(d). This section provides: "The determinations and redeterminations by any division of the Tax Court involving any question arising under section 721(a) (2) (C) or section 722 shall be reviewed by a special division of the Tax Court which shall be constituted by the Presiding Judge and consist of not less than three members of the Tax Court. The decisions of such special division shall not be reviewable by the Tax Court, and shall be deemed decisions of the Tax Court."

The petitioner's contentions on this subject are summarized under paragraph 3 of its "Statements of Questions Presented for Review" supra.

The petitioner has misinterpreted the function of the "Special Division". The review by the Special Division required by Section 732(d) is not intended to be similar to a review by an Appellate Court with the usual opportunity to submit briefs and to make oral arguments. Because of the complexities of the relief provisions of the Excess Profits Tax law, Congress provided for Special Divisions within the Tax Court for the purpose of reviewing decisions involving these abnormalities provisions. These Special Divisions were composed not only of experts in tax law, but of experts who were to keep abreast of legislation and construction of questions of law arising under these abnormalities provisions. When a Judge of the Tax Court is assigned to hear and decide a case which involves these abnormalities sections, his opinion is automatically reviewed by the Special Division assigned to review the particular section involved. This review within the Tax Court itself was discussed in Green Springs Dairy Inc., v. Commissioner, 4 Cir., 208 F.2d 471, 476, where the Court said that the purpose of Congress in enacting Section 732(d) was not "to secure a reargument of the case but to assure a consistent and uniform application of the principles of the excess profits tax statute by a group familiar with the problems involved."

■ The fact that the petitioner's motions to amend the findings and for reconsideration were denied by the Division, whose decision was approved by the "Special Division", does not establish that the function of the "Special Division" was usurped. In denying such motions, the Division simply refused to disturb the decision which the "Special Division" had already approved. We hold that the petitioner was not denied due process of law because it was not given an opportunity to appear, argue, or submit briefs before the "Special Division".

The next point for consideration is whether or not this Court should decline jurisdiction because of the provisions of Section 732(c). This section provides: "If in the determination of the tax liability under this subchapter the determination of any question is necessary solely by reason of section 711 (b) (1), (H), (I), (J), or (K), section 721, or section 722, the determination of such question shall not be reviewed or redetermined by any court or agency except the Tax Court."

■ Petitioner contends that the determination of all remaining questions presented by it for review is not made necessary "solely by reason of * * * section 722" and hence the provisions of Section 732(c) do not prohibit review by this Court.

Petitioner argues: (1) That the question presented under paragraph 1 of its "Statement of Questions on Appeal" (supra) involve the application and effect of Section 713(f); (2) That the questions presented under paragraph 2, in all of its parts, involve the denial to petitioner of due process under the Fifth Amendment to the Constitution of the United States, and that as to part "d" thereof, there is also involved the duty of the Tax Court under Section 1117 of the 1939 Code. We will consider these points ad seriatim.

Under point 1, petitioner states that the Tax Court erroneously disregarded petitioner's growth because an adjustment for growth had been allowed petitioner under Section 713(f). On this issue the Tax Court found that "The Excess Profits Tax paid by petitioner for the years in issue was not excessive and discriminatory. Petitioner was not entitled to a constructive average base net income which was large enough to produce a credit greater than the credit received under Section 713 of the 1939 Code." We do not construe the decision of the Tax Court in denying relief that it expressly or impliedly held, based on the foregoing finding, that the petitioner was precluded from receiving any relief under Section 722(b) (2), be-

cause it had received the benefit of Section 713(f). We construe the finding to mean simply that under the facts presented to the Tax Court, the petitioner failed to establish that any relief which the Tax Court could give under Section 722(b)(2) would result in a credit greater than the petitioner had already received under Section 713(f). We therefore hold that the determination of the question presented under this heading is made necessary solely by reason of Section 722(b)(2), and that, therefore, under Section 732(c), this Court is without jurisdiction to pass upon that issue.

Under point (2) above, petitioner argues that the decision of the Tax Court was arbitrary and capricious, contrary to the facts found by the Tax Court, and that the Tax Court failed to make a finding on a material issue presented to it.

Petitioner sought relief under Section 722(b)(4) "upon the basis of a change in its capacity for operation and production occurring within the base period." The Tax Court found that "During the base period there was a change in the productive capacity of the petitioner. Lack of productive capacity was not a factor which to any appreciable extent limited petitioner's sales." There is no finding by the Tax Court on the issue of a change in the petitioner's capacity for operation occurring within the base period.

With respect to the change in petitioner's capacity for production occurring within the base period, the Court found that there was a change in the productive capacity of the petitioner's business during the base period; that the President and General Manager of petitioner was an experienced executive in the bakery industry prior to petitioner's organization in 1931; that during the period 1931 to 1939 petitioner made nine additions to its plant; that on December 15, 1931, petitioner completed the installation of its first traveling oven; that on April 9, 1934, petitioner completed the installation of its second traveling oven; that the installation of a third traveling oven was completed

on June 3, 1937; at that time, space was provided for the eventual installation of a fourth oven, and the electrical wiring, fixtures, plumbing and other connections were installed; that petitioner was financially unable to install a fourth traveling oven in 1937, even though its management considered that there was an available market for such additional production; that on December 5, 1939, petitioner completed the installation of its fourth and largest traveling oven; that during the base period the baking area of petitioner's traveling ovens increased from 1,260 square feet to 2,688 square feet; that during the same period petitioner acquired additional bread and cake machinery, bread and cake tools, and bread and cake fixtures for use with its increased baking capacity; that petitioner in 1937 spent $10,000 for electrical wiring and other connections for the additional oven, but could not install the oven then because of financial limitations.

On this phase of the case the Tax Court relied on Green Spring Dairy, Inc., 18 T.C. 217 which the Tax Court stated "is strikingly similar to the case at bar * * *". The following quotation from the Green Spring case omitted from the opinion of the Tax Court in the instant case makes that case a poor reed on which to rely. The omitted quotation is as follows:

"While petitioner experienced difficulty with its facilities toward the end of 1935, the difficulty lay in its distribution and storage facilities and not in its production facilities; moreover, corrective measures were taken before the end of 1935 to increase distribution and storage capacity through the opening of a branch station. Although there was undoubtedly a certain amount of congestion in petitioner's plant, we are satisfied that it had not yet reached the limit of its capacity, and that its sales or acquisition of new customers was not in any way impeded. Throughout these years petitioner's operation and manage-

ment were in the hands of tried and capable businessmen, *who had the resources to construct a new plant earlier if it had been necessary, and we are unable to conclude that they did not act in time*". (Italics ours.)

In the instant case the Tax Court found that the petitioner could not install the additional oven because of financial difficulties which finding is directly contrary to the statement in the Green Spring Dairy case in which it was stated that the taxpayer there had the resources to construct a new plant earlier if it had been necessary. Under a fair construction of the finding of the Tax Court there was an available market in 1937 for additional production.

 In view of the evidentiary findings of the Tax Court on this subject, its conclusion "lack of productive capacity was not a factor which to any appreciable extent limited petitioner's sales" appears to be arbitrary and contrary to its own findings.

As above stated, the Tax Court failed to make a finding on the issue of a change in petitioner's capacity for operation (as distinguished from capacity for production) occurring within the base period. As above noted, petitioner sought relief upon the basis of a change in its capacity for operation *and* production. It would be a rare instance where productive capacity alone would produce income. In all but the most rare instances there must not only exist productive capacity, but also a market must be found or developed, in order to produce income. The Tax Court found that petitioner added in 1939, twenty-six franchise routes and five coach routes, which included in 1939 extensions to Ventura, Santa Barbara and San Diego counties; that petitioner always installed ovens in anticipation of further development of its markets; that to avoid offering stale goods to customers, it was petitioner's policy to get the oven capacity ready, and then develop the market, i.e., the routes; that during the period of July 1, 1939 to March 1, 1940, petitioner spent

approximately $50,000.00 for suburban loading rooms, and $79,000.00 for trucks, trailers, coaches and franchise cars, and that petitioner was committed to its 1939–1940 expansion program prior to December 31, 1939. The Tax Court should have made a finding as to whether or not, if this increase in capacity for operation had been made two years earlier, a higher level of earnings would have been reached at the end of the base period, and, if so, the amount thereof.

In light of the foregoing record in respect to relief sought by the petitioner under Section 722(b) (4), we are not precluded from assuming jurisdiction because of the provisions of Section 732(c).

Accordingly, the petition for review is dismissed for lack of jurisdiction in respect to the relief sought by petitioner under Section 722(b) (2) and remanded to the Tax Court for further consideration of the relief sought by petitioner under Section 722(b) (4).