HELMS BAKERIES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 32321. Filed April 18, 1957.

*George T. Altman, Esq.*, for the petitioner.
*R. B. Sullivan, Esq.*, for the respondent.

OPINION.

WITHEY, *Judge:* Our Findings of Fact and Opinion filed in this proceeding when it originally was before us appear at 23 T. C. 967. We there held that petitioner was not entitled under the provisions of section 722 (b) (2) and (b) (4) of the Internal Revenue Code of 1939 to relief from excess profits taxes for 1943, 1944, and 1945 in excess of that already afforded by section 713 (f). Our holdings were appealed by the petitioner to the United States Court of Appeals for the Ninth Circuit. In its opinion, which appears at 236 F. 2d 3, that court held that it was without jurisdiction to pass upon our holding involving relief under the provisions of section 722 (b) (2) but held that it had jurisdiction to consider our action with respect to relief under section 722 (b) (4) and remanded the proceeding to us for further consideration of the question of the relief sought by petitioner under that section.

In this Court's Findings of Fact and Opinion when this case was originally before us, it was held petitioner was not qualified for relief under section 722 (b) (4), Internal Revenue Code of 1939, because

although it had shown an increased capacity for production by the installation of its fourth oven on December 5, 1939, that increase in capacity was not such as to change the character of its business within the meaning of that section. This was so, we held, because there was no showing that the increased capacity, if it had occurred 2 years sooner, would have resulted in any substantial increase in base period income. We relied upon our holding in *Green Spring Dairy, Inc.*, 18 T. C. 217.

In its opinion the Court of Appeals has used the following language, in part:

petitioner sought relief upon the basis of a change in its capacity for operation *and* production. It would be a rare instance where productive capacity alone would produce income. In all but the most rare instances there must not only exist productive capacity, but also a market must be found or developed, in order to produce income. The Tax Court found that petitioner added in 1939, twenty-six franchise routes and five coach routes, which included in 1939 extensions to Ventura, Santa Barbara and San Diego counties; that petitioner always installed ovens in anticipation of further development of its markets; that to avoid offering stale goods to customers, it was petitioner's policy to get the oven capacity ready, and then develop the market, i. e., the routes; that during the period of July 1, 1939 to March 1, 1940, petitioner spent approximately $50,000.00 for suburban loading rooms and $79,000.00 for trucks, trailers, coaches and franchise cars, and that petitioner was committed to its 1939–1940 expansion program prior to December 31, 1939. The Tax Court should have made a finding as to whether or not, if *this increase in capacity for operation* had been made two years earlier, a higher level of earnings would have been reached at the end of the base period, and, if so, the amount thereof. [Emphasis supplied.]

As we interpret the above language of the Court of Appeals, it has held that the enumerated additions of routes and facilities to develop the same constitute a change in capacity for operation as distinguished from capacity for production under section 722 (b) (4) and that it is now this Court's duty to assume that all of such changes, including the addition of the fourth oven, took place 2 years prior to the dates of the actual changes and installation of additional facilities and thereupon to make a determination as to whether or not petitioner's earnings under such circumstances would have reached a higher level at the end of the base period. It is our view that the Court of Appeals has determined that petitioner is qualified to reconstruct its average base period net income.

The question remaining is, under those circumstances, would petitioner's reconstructed average base period net income not only exceed its actual experience in that respect, but also would it exceed the relief already computed by the respondent by use of the growth formula, section 713 (f). Under that section the petitioner's credits for the years at issue are as follows:

| Year | Statutory ABPNI | 95 per cent of ABPNI | 6 per cent of capital reduction | Credit allowed |
|------|----------------|----------------------|----------------------------------|----------------|
| 1940 [1] | $226,247.89 | $214,935.50 | ------------ | $214,935.50 |
| 1941 | 226,247.89 | 214,935.50 | $518.14 | 214,417.36 |
| 1942 | 226,247.89 | 214,935.50 | 2,924.63 | 212,010.87 |
| 1943 | 226,247.89 | 214,935.50 | 4,446.00 | 210,489.50 |
| 1944 | 205,206.91 | 194,946.56 | 4,446.00 | 190,500.56 |
| 1945 | 226,247.89 | 214,935.50 | 4,446.00 | 210,489.50 |

[1] For purposes of unused excess profits credit carryover. Income taxes not deducted pursuant to 1941 Act.

We have carefully reconsidered the record in light of the opinion and mandate of the Court of Appeals. In reconstructing petitioner's average base period net income, we have assumed that all its increased capacities for operation referred to in that court's opinion, together with the increased capacity for production represented by the fourth oven, took place 2 years earlier than they actually did. Realizing that certain increased capacities for operation were installed prior to December 5, 1939, we have nevertheless used that date as the initial date for application of the push-back principle because the increased facilities for operation could not have been utilized before the installation of the fourth oven. We are unable to conclude however that petitioner's earnings, by the close of 1939, even assuming that "there was an available market in 1937 for additional production," would have reached a higher level than that which it actually reached, $226,247.89. The next step then is to determine constructive average base period net income using this terminal figure. The petitioner urges the use of a particular method which we regard as unsuitable for the purpose under the facts of this case. We have considered other possible methods, some of which recommend themselves as reasonable, but there is no method, suggested or known to the Court and considered appropriate under the circumstances of this case, which would produce a figure for constructive average base period net income even as large as the $226,247.89 computed under section 713 (f) and used by the Commissioner in arriving at the credit for his determination. After consideration of the facts, among others, that the baking industry in the base period was highly competitive in petitioner's sales area, that petitioner in order to make additional profit from increased sales must capture customers from competitors, that no shortage of baked goods existed in petitioner's sales area during the base period, that petitioner's cost of production was substantially increased by the additional capacities for operation and production during at least 1 full year while the development of additional routes attributable to such increased capacities took place, and that a substantial price decline took place during the latter 6 months of 1939, we find that petitioner's level of earnings at the close of 1939 would not have exceeded its actual earnings at that date.

Upon reconsideration of the same factors and the entire record, we are convinced and find that its reconstructed average base period net income would not exceed that which respondent has accorded it under section 713 (f) of the Internal Revenue Code of 1939.

Reviewed by the Special Division.

*Decision will be entered for the respondent.*