LANZIT CORRUGATED BOX CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 39085.   Filed November 20, 1957.

*Morris W. Needlman, Esq.*, for the petitioner.
*David H. Nelson, Esq.*, for the respondent.

OPINION.

WITHEY, *Judge:* Petitioner claims qualification to reconstruct its base period net income for the purpose of determining its excess profits tax for the years at issue under section 722 (b) (4), I. R. C. 1939, because of a change in the character of its business during the base period. The claimed change in character, it contends, occurred because of an increase in its capacity for operation and production, part of which increase took place within the base period and to part of which it was committed during the base period resulting in an increase in capacity which, had it taken place 2 years prior, would in turn have resulted in increased average base period net income, thus affording it tax relief with respect to its excess profits taxes here in issue. Respondent now concedes an increase in petitioner's capacity for production which took place and was put into operation in July 1938 and, further, that during the base period it was committed to a course of action which resulted in a further increase in capacity through the installation in 1940 of an 85-inch corrugating machine in its manufacturing plant. However, respondent insists that such increases in capacity even had they taken place 2 years prior to the date of the two installations would not have resulted in increased base period net income but instead would have resulted in decreased base period net income because of increased cost of such installations and depreciation and cost of operation thereof. In this connection he relies upon *National Grinding Wheel Co.*, 8 T. C. 1278; *Green Spring Dairy, Inc.*, 18 T. C. 217, affd. (C. A. 4, 1953) 208 F. 2d 471; *Farmers Creamery Co. of Fredericksburg, Va.*, 18 T. C. 241; and *Schneider's Modern Bakery, Inc.*, 19 T. C. 763. In those cases this Court followed the principle that an increase in capacity for operation or production which did not or would not lead to increased base period net income is not a change in the character of a taxpayer's business within the meaning of section 722 (b) (4) which would qualify it to reconstruct its base period net income. We think the cases have application here.

Petitioner's business was seasonal and there is no indication in the record but that its existing capacity during the base period before any increase thereof was sufficient, with slight exception, to meet the peak demands of its sales activities. In July 1938, it put into operation a new steam boiler and the necessary plumbing in connection therewith to attach it to its existing 63-inch corrugator. This installation

permitted an increase in its speed of production of corrugated board. However, even after the installation of the boiler, the increased capacity was used in less than half the remaining months of the base period. During such months as the production exceeded the peak production prior to such installation, such excess production was not sufficient in amount to render petitioner's actual base period experience an inadequate measure of normal production, particularly in view of the fact that its base period net income has been determined under section 713 (f). That section is designed to give due consideration to the natural growth of the taxpayer and affords adequate relief from excess profits tax where mere technological growth has taken place as distinguished from a change in character. Petitioner's claimed change in character is in reality a technological growth.

In our view petitioner has failed in its proof with respect to its base period market. Even assuming that it did not arrive at its normal level of income which might be expected from the sale of its product in view of its increased capacity, it has failed to convince us that it would have been able at any time during the base period to capture from its competitors sufficient additional sales to have resulted in increased income attributable to such increased capacity. The proof petitioner has offered with respect to market conditions in its industry during the base period relates to the sales and production experience of some 21 paper box manufacturers, other than itself, located within an area in the United States roughly east of the Mississippi River. Six of the 21 companies referred to are within zone 9, which is the area within which petitioner made more than 75 per cent of its sales during the base period. The area consists of the city of Chicago, the northern half of the State of Illinois, and the industrial area bordering the southern tip of Lake Michigan. Within that area the 6 companies or corporations, other than petitioner, operate 8 paper box factories. These 8 factories constitute petitioner's main competition. To all but an inconsequential extent, petitioner does not compete with the remaining 15 paper box manufacturers above referred to for the reason that the bulk of its product when shipped to customers any appreciable distance from its plant makes such shipments uneconomical because of the excessive freight rates involved. In fact this is true of its entire industry. Nowhere does it appear that with its existing capacity prior to July 1938 petitioner ever lost a customer because of inability to fulfill his order for paper boxes. It is significant too that had petitioner needed additional productive capacity in order to obtain any new customers during the base period it was financially able to acquire it. After July 1938, when the new and more powerful steam boiler had been attached to the 63-inch corrugator, there is no indication that such increased capacity led to the acquisition of any new customers.

Indeed, during most of the remainder of the base period its plant was operated below its capacity existing prior to that time. The increase in petitioner's capacity *permitted* an increase in its base period income but did not *cause* such increase. *Green Spring Dairy, Inc., supra.*

Petitioner makes claim for increased average base period net income on the basis of a reduction in its labor cost. Due to the fact that with application of the push-back rule petitioner from April 1938 would have produced its actual square footage of paper box material with 15 employees in one-third the time actually required, it follows that its labor cost would have been reduced to an extent. However, we are unable to find from this record that such reduction in labor cost would have resulted in increased net income to an extent which would exceed the allowances already granted by respondent under section 713 (f). We are impressed too that if depreciation upon the new equipment is considered, its savings through reduction in labor cost would be considerably less although we are given no explicit evidence with respect to the depreciation actually taken by petitioner upon its new equipment.

It follows that petitioner has failed to demonstrate that its increased capacity for operation and production during the base period even with the application of the push-back rule with respect to installation of the 85-inch corrugator would have resulted in increased base period net income. We therefore conclude that petitioner has failed to show that its actual average base period net income is an inadequate standard upon which to determine its excess profits taxes for the years 1941 through 1945.

Reviewed by the Special Division.

*Decision will be entered for the respondent.*